**SALENIA A.B., A Swedish Corporation, Respondent,**

**v.**

**AIR NATIONAL AIRCRAFT SALES & SERVICES, INC., A California Corporation, Appellant.**

**No. WD 36940.**

Missouri Court of Appeals, Western District.

*April 8, 1986.*

Motion for Rehearing and/or Transfer to Supreme Court Denied May 22, 1986.

Application to Transfer Denied July 15, 1986.

S. Preston Williams, Thomas E. Barzee, Jr., Williams & Barzee, North Kansas City, for appellant.

John Harl Campbell, Campbell & Meyers, Kansas City, Law Firm of Edward A. McConwell, Overland Park, Kan., for respondent.

Before TURNAGE, P.J., and DIXON and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The defendant, Air National Aircraft Sales and Services, Inc. (Air National), appeals from a judgment and order entered by the Circuit Court of Platte County, Missouri, on February 12, 1985. This appeal stems from an action filed by Salenia, A.B. (Salenia), a foreign corporation and the plaintiff-respondent, to attach an aircraft it had leased to Air National. The issues raised on appeal relate to the trial court's assertion of personal jurisdiction over the nonresident defendant, the sufficiency of service of process on Air National, the validity of a writ of attachment issued by the court, the effect of a petition in bankruptcy filed by Air National subsequent to the suit in question, and the authority and jurisdiction of the trial court to award damages to Salenia.

Salenia is a resident and citizen of Sweden. Air National is an Ohio corporation with its principal place of business in Monterey, California. The origins of this case date back to March, 1984, at which time Air National was in the charter airline business. On March 3, 1984, Salenia and Air National entered into a written contract whereby Air National leased a Boeing 747 from Salenia. On May 22, 1984, the parties modified the lease contract by an addendum. Air National used the aircraft to provide charter services for tour groups.

On July 16, 1984, Air National entered into a separate contract with Trans World Airlines, Inc. (TWA) for maintenance work to be performed by TWA on the aircraft at its overhaul base at Kansas City International Airport (KCI) in Platte County, Missouri. While the aircraft was in the overhaul facility, Salenia filed a complaint in the United States District Court for the Western District of Missouri on July 19, 1984, alleging breach of contract, conversion and violation of a Florida statute. On that date, the federal district court issued an *ex parte* writ of attachment against the aircraft. However, on July 25, 1984, the federal court issued an order dismissing the complaint for improper venue.

Salenia then filed this suit by a Petition for Declaratory Judgment against Air National in the Circuit Court of Platte County on July 26, 1984, again alleging breach of contract, conversion and violation of a Florida Statute. Air National's failure to make monthly rental payments was the primary breach alleged by Salenia. On the same date, the circuit court issued an *ex parte* Order of Writ of Attachment, as well as the Writ of Attachment against the aircraft. No attachment bond was filed.

In response, reserving its objections to jurisdiction, Air National, filed a "Motion to Reconsider Order of Writ of Attachment" on July 30, 1984. On the same date, TWA filed a Motion for Leave to Intervene because it had possession of the aircraft and had not been paid for the maintenance work completed. On July 31, 1984, the circuit court conducted a hearing on the two motions and granted TWA's Motion for Leave to Intervene.

The court overruled Air National's motion, but it did order the Writ of Attachment conditionally dissolved pursuant to Rule 85.10 and granted Air National pos-

session of the aircraft subject to the terms of the lease agreement and the addendum and subject to Air National's compliance with certain conditions to be met by August 1, 1984. These conditions entailed paying the monies due to TWA, preventing the lapse of insurance on the aircraft, depositing cash in the registry of the court as security for a bond, and paying the monthly rental due on August 1st.

On August 2, 1984, the court conducted a second hearing, found Air National had failed to comply with the court's order of July 31st, and entered an order giving possession of the aircraft to Salenia if Salenia satisfied TWA's claim and posted a $1,000,000 surety bond. Air National appeared and again reserved objections to jurisdiction. Salenia posted the bond, satisfied TWA's claim, and on August 8, 1984, took possession of the aircraft and had it flown to Luxembourg.

On August 9, 1984, Salenia requested a summons be issued for service outside Missouri on Air National. The sheriff of Monterey County, California, returned the summons on September 21, 1984, stating he was unable to locate and serve Air National. In the meantime, Air National filed a Bankruptcy Petition in United States Bankruptcy Court on September 12, 1984.

In December, 1984, TWA filed a notice of dismissal of its intervention petition. On February 12, 1985, this case was heard after which the court ordered (1) the written lease contract and addendum were properly terminated by Salenia on July 2, 1984, by reason of a material breach and default of Air National, (2) the rights and interests of Air National to the aircraft were terminated effective July 2, 1984, (3) Salenia's attachment bond was dissolved, and (4) Salenia was awarded damages resulting from the material breach of Air National in the sum of $859,893.

This court first takes up Air National's point dealing with the writ of attachment due to dereliction of Rule 85. Air National claims the trial court erred in issuing the Writ of Attachment against the aircraft because Salenia failed to post a bond as required by Rule 85.04 and Rule 85.08.

Rule 85.04 provides "[i]f the court finds that the facts stated in the affidavit show that the writ of attachment should issue, *the writ shall be issued upon compliance with Rule 85.08.*" (Emphasis added). Rule 85.08 provides:

(a) Claimant to Furnish Bond. The claimant shall file a sufficient bond, approved by the court, executed by the claimant as principal and one or more sufficient sureties to the effect that they are bound to the State of Missouri in an amount set by the court but not exceeding double the amount claimed.

(b) Conditions of Bond. The conditions of the bond shall be that the claimant shall:

(1) Prosecute his claim without delay and with effect;

(2) Refund all sums of money that may be adjudged to be refunded to the owner of the property or found to have been received by the claimant and not justly due to him;

(3) Pay all damages and costs that may accrue to the owner of the property, any garnishee or interpleader by reason of the attachment, or any process or proceeding in the action, or by reason of any judgment or process thereon; and

(4) Pay all damages and costs that may accrue to any sheriff or other officer by reason of acting under the writ of attachment, following the instructions of the claimant.

(c) When No Bond Required. If the State or a county is a claimant in its own behalf no bond shall be required.

▌ Attachment proceedings in Missouri are special and extraordinary proceedings, mandating strict compliance with statutory provisions and the Missouri Rules of Civil Procedure. *State ex rel. Froidl v. Tillman,* 662 S.W.2d 907, 909 (Mo.App.1983); *State ex rel. Belle Starr Saloon, Inc. v. Patterson,* 659 S.W.2d 789, 790–91 (Mo. App.1983). "When such strict compliance has not been had, the writ of attachment will be irregular and the court acquires no

jurisdiction over any res." *State ex rel. Froidl, supra,* at 909.

■ Salenia did not file a properly executed bond prior to the issuance of the writ of attachment on July 26, 1984. In fact, Salenia did not file an approved surety bond in the amount of $1,000,000 until August 8, 1984, the day the aircraft was flown to Luxembourg and 13 days after the writ of attachment issued. Salenia's failure to file a bond until August 8, 1984, ignores the plain language of Rule 85.04 and 85.-08(a), which mandates the furnishing of a bond before the writ of attachment issues. *See State ex rel. Belle Starr, supra,* at 790.

■ Salenia offers three arguments to counter the bond requirement of Rule 85.-08(a). First, Salenia relies on § 521.050, RSMo 1978, which deals with suits by attachment and provides in pertinent part:

Any plaintiff wishing to sue by attachment may file ... a petition or other lawful statement or exhibit of his cause of action, and, *except in suits instituted by the state or a county in its own behalf, and also, except in cases where the defendant is not a resident of the state of Missouri, in either of which cases no bond shall be required,* shall also file an affidavit and bond ... (Emphasis added).

In its Motion for Order for Writ of Attachment, Salenia moved the court to attach the aircraft "pursuant to VAMS 521.-050 without bond" and now claims it was not required to post a bond because Air National was not a resident of Missouri. However, Rule 85.08(c) provides an exception to the bond requirement only if the state or a county is the claimant. The rule does not adopt the statutory exception to the bond requirement "in cases where the defendant is not a resident of the state of Missouri." *Compare* § 521.050, RSMo. 1978 *with* Rule 85.08.

Salenia argues no inconsistency exists between the statute and the rule and the "clear implication from Rule 85.08 is that its provisions apply only in those cases

where a bond is not excused pursuant to § 521.050." This court cannot agree. The Missouri Supreme Court adopted Rule 85.-08 in its present form on June 10, 1980, to become effective on January 1, 1981. Prior to this time, Rule 85.04 was almost identical to § 521.050. Rule 85.04 then stated "except in cases where the defendant is not a resident of the State of Missouri ... no bond shall be required...." Mo.R.Civ.P. 85.04 (1980); *see Lubrication Engineers, Inc. v. Parkinson,* 341 S.W.2d 876, 879 (Mo.App.1961). Thus the rule changes adopted in 1980 clearly omitted the exception to the bond requirement in the case of a nonresident defendant.

The conflict between Rule 85.08 and § 521.050, RSMo 1978, has to be resolved in favor of the rule. Rule 41.02 states: "Rules 41 to 101, inclusive, are promulgated pursuant to authority granted this Court by Section 5 of article V of the constitution of Missouri and supersede all statutes and existing court rules inconsistent therewith." The "Supreme Court of Missouri has the authority to make rules governing the practice in, and operation of, Missouri Courts, if substantive rights are not changed.... All rules promulgated pursuant to that authority supercede all statutes and existing court rules inconsistent therewith." *Reichert v. Lynch,* 651 S.W.2d 141, 143 (Mo.banc 1983) (citations omitted). Rule 85.08 is procedural and takes precedence over § 521.050, RSMo 1978. Mo. Const. art. V, sec. 5; Rule 41.02; *see also Washington University Medical Center Redevelopment Corp. v. See,* 654 S.W.2d 192, 193 n. 1 (Mo.App.1983); *Carondelet Savings and Loan Association v. Boyer,* 645 S.W.2d 24, 26 (Mo.App.1982).

As a fall back position and without citation of authority, Salenia argues even if an inconsistency exists between the rule and the statute, the fairest way to resolve the conflict where the attachment proceeding involves a nonresident defendant is to allow the trial court to decide on a case by case basis whether a bond should be required. Salenia attempts to bolster the argument by stating that § 521.050 reflects the de-

sire of the legislature that no bond should be required where the defendant is a non-resident. The argument again ignores the plain language of Rule 85.08(a), which requires the posting of a bond and Rule 85.04 which provides the writ of attachment *shall be* issued *only* upon compliance with Rule 85.08. Moreover, with regard to Chapter 521 and Rule 85, the Missouri Supreme Court has stated "[s]trict compliance with all of the requirements formerly imposed by statutes and now also enjoined by civil rules is essential to confer and support jurisdiction." *State ex rel. Eagle Bank & Trust Co. v. Corcoran,* 659 S.W.2d 775, 777 (Mo.banc 1983).

■ Finally, with regard to the bond, Salenia argues even if the rule supercedes the statute, Air National suffered no harm because of Salenia's failure to file the bond until 13 days after the writ issued. Salenia grounds this argument on the fact that TWA's mechanic's lien on the aircraft prevented Air National from removing the aircraft from KCI until the lien was satisfied. Salenia further states since Air National made no attempt to satisfy the lien during the 13 day period, the aircraft was effectively grounded. Therefore, Air National suffered no harm from Salenia's 13 day delay in filing the bond.

Salenia's argument again does not account for the procedural requirements mandated by Rules 85.04 and 85.08. Moreover, the provisions of Chapter 521, RSMo 1978, and Rule 85, both dealing with attachments, do not suggest the bond requirement is waived when hindsight reveals the defendant was not actually harmed by the claimant's failure to file a bond. The purpose of requiring an attachment bond is to protect the defendant in case of improper use of attachment. The bond assures the court and the defendant that there will be sufficient funds to pay the defendant's damages in the event of a wrongful attachment, that there will be an expeditious adjudication of the claim, and that the risk of wrongful, improvident, or bad faith claims will be minimized. *State ex rel. Froidl, supra,* at 910.

In fact the *Froidl* court quotes the following passage from *Stevenson & Hord v. Robbins,* 5 Mo. 18 (1837), in which the writ issued before the bond was filed: "It is unreasonable to suppose the legislature [sic] ever wished that a plaintiff, who has taken out a writ, by which so much mischief might be done, should be indulged in the [sic] filing of [sic] a bond after the writ was issued." 662 S.W.2d at 909 (quoting *Stevenson & Hord v. Robbins,* 5 Mo. 18, 21 (1837)).

In *Belle Starr, supra,* the bond filed in an attachment proceeding was executed solely by the surety. However, the principal failed to sign the bond. On the defendant's motion to quash, the trial court allowed the principal time to correct the error. The appeals court found the trial court's action ignored the plain language of Rule 85.08(a) mandating the filing of a bond prior to the issuing of the writ of attachment. The court stated:

An improper seizure cannot be made valid retroactively by the principal's signature. Such a procedure may encourage unsigned bonds and subvert the protection the defendant is to be afforded by the statute. Pre-judgment attachments are not favored, principally because they are subject to a constitutional attack on due process grounds. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

*Id.* at 790–91. The *Belle Starr* court held (1) the defendant was entitled to a bond signed by the plaintiff, (2) the court was duty bound to quash the writ of attachment because the plaintiff did not comply with the procedural bond requirement, and (3) the court had no jurisdiction to issue the prejudgment writ of attachment until the principal executed the bond.

In the case at bar, Salenia had filed no bond at the time the writ of attachment issued. By contrast, in *Belle Star* a bond had been filed, but it was defective in that it had not been signed by the plaintiff. There the court stated "[a]n improper seizure cannot be made valid retroactively by the principal's signature." *Id.* By the

same token, the improper seizure in the present case cannot be made valid retroactively simply because Air National allegedly suffered no harm. TWA's role in the case as it affects Salenia's duty to furnish a bond at the outset is of no moment, and Salenia's argument that the existing facts dictate a waiver of the bond requirement is without merit. *See State ex rel. Froidl, supra,* at 909.

█ The law in Missouri as to prejudgment writs of attachment requires a proper bond be filed prior to issuance where a nonresident defendant is involved. This jurisdictional requirement cannot not be waived by the parties or later remedied by a plaintiff-claimant. As such, the trial court here lacked jurisdiction to issue the prejudgment writ of attachment. Rule 85.08(a).

This court necessarily must examine the effect of the trial court's lack of jurisdiction to issue the prejudgment writ of attachment. Salenia's petition for Declaratory Judgment states "the action is brought in rem as a suit by attachment pursuant to VAMS 521.050 against property of defendant which is located within Platte County, Missouri." Since the suit was one by attachment, it is obvious Salenia brought the suit in Platte County only because the aircraft was located there on July 26, 1984.

Where a suit against a nonresident is brought by attachment, it is important to bear in mind the purpose for proceeding in that manner:

> An attachment is a purely statutory remedy, ancillary to the main action, and provides a summary and anticipatory method to impound the assets of a defendant to facilitate the collection of a judgment against him.... Where the defendant is nonresident, attachment procedure serves the additional purpose to compel that person to submit to the jurisdiction of the court upon pain of forfeiture of the sequestered property.

*State ex rel. Mather v. Carnes,* 551 S.W.2d 272, 281–82 (Mo.App.1977) (citations omitted); *see also State ex rel. Auchincloss,*

*Parker & Redpath v. Harris,* 349 Mo. 190, 159 S.W.2d 799, 805 (1942).

In discussing an in rem attachment suit based on the defendant's nonresidence, the Missouri Supreme Court has stated the remedy of attachment "may be invoked although the court has no jurisdiction over the person of the defendant (where the proceeding is in rem and based upon constructive service)." *State ex rel. Auchincloss, supra,* at 805. In this case, Salenia brought its action in rem as a suit by attachment in order to impound the aircraft it had leased to Air National and supposedly to facilitate collecting any judgment it might obtain against Air National as a result of Air National's alleged breach of contract. The trial court issued the writ over Air National's objection to Salenia's failure to meet the bond requirement before the writ was issued. In August, 1984, the trial court ordered the aircraft "surrendered to the unfettered use and possession" of Salenia. In its order of February 12, 1985, the trial court determined the written lease was properly terminated by Salenia by reason of Air National's material breach and default. It further ordered Air National's rights and interests in the aircraft were effectively terminated on July 2, 1984, and awarded damages to Salenia in the sum of $859,893.

█ The problem is from the very outset of this litigation the trial court never acquired jurisdiction over the res, the aircraft. This being the case, the issue narrows to whether the court had jurisdiction to proceed in any fashion with regard to the rights of the parties to the aircraft, the matter of the breach, and the award of damages to Salenia. The law in Missouri is that until the court acquired jurisdiction of the aircraft, it had no authority to render judgment for Salenia with respect to it. *Bagby v. Kirby,* 225 Mo.App. 1190, 1195, 35 S.W.2d 54, 57 (1931).

A review of Missouri cases indicates the authority for this requirement is found in § 521.170(1), RSMo 1978, and corresponding Rule 85.07. Section 521.170(1) provides: "The writ and petition shall be

served upon the defendant as an ordinary summons." In *Givens v. Harlow*, 251 Mo. 231, 158 S.W. 355 (1913), the Missouri Supreme Court stated:

> The *res must be attached and properly attached*, but this is not all. Section 2316, Revised Statutes 1909, which has been the law for years, says: "The writ and petition shall be served upon the defendant as an ordinary summons." The *property must be attached*, and the defendant notified, is the meaning of this language.... The law requires both of these steps to be taken before the court can proceed to render a judgment in an attachment proceeding.

*Id.* at 243, 158 S.W. at 358 (emphasis added).

The *Givens* court concluded the property was properly attached, but the mode of service upon the defendant was invalid. Because *both* steps were not taken, the court held "the judgment in the attachment proceeding was void upon its face." *Id.*, 158 S.W. at 358. *Givens* was not the supreme court's last word on this matter. Two subsequent cases reiterate the law set forth in *Givens*. Again, the issues in both cases turned on the sufficiency of notice to nonresident defendants. The validity of the proper attachment of the res was not questioned. However, the language of the court is clear regarding proper attachment of the res. First, in *Graves v. Smith*, 278 Mo. 592, 213 S.W. 128 (Mo.banc 1919), the court stated:

> [W]hen no personal or general judgment is sought or can be obtained and the suit is brought only to charge or fix a lien upon lands of a non-resident defendant, the statute provides a method of subjecting the *res* by attachment of his property and notice to him by publication in prescribed form, or by substituted service. *Unless both of these statutory prerequisites are complied with, the local court acquires no jurisdiction to proceed and any judgment rendered by it, special or general, is an absolute nullity* and open to collateral attack in any other court where rights thereunder are attempted to be enforced. The reason is that the

statute in such cases gives the court no power to act unless the property is seized by a writ of attachment and the non-resident owner is apprised of that fact....

*Id.* at 599, 213 S.W. at 130 (emphasis added).

Second, in *State ex rel. Ferrocarriles Nacionales de Mexico v. Rutledge*, 331 Mo. 1015, 56 S.W.2d 28 (1932), the court, quoting *Givens*, stated:

> While the res must be properly attached, that is not all that is required. "The property must be attached and the defendant notified.... The law requires both of these steps to be taken before the court can proceed to render a judgment in an attachment proceeding." [*Givens v. Harlow*, 251 Mo. 231, 158 S.W.2d 355].

*Id.* at 1034, 56 S.W.2d at 37.

■ The rule in Missouri according to the authority of *Givens* and its progeny is two-fold: (1) the res must be properly attached, and (2) there must be some form of valid service. *Weidman v. Byrne*, 207 Mo. App. 500, 507, 226 S.W. 280, 282 (1921). Though the cases just mentioned do not address issues regarding proper attachment of the res, they unequivocally state the law requires proper attachment of the res. Unless this prong of the test is complied with, the trial court acquires no jurisdiction over the res, and the judgment attempted to be rendered is a nullity. *Id.*

In its petition for declaratory judgment, Salenia asserts the action is brought in rem as a suit by attachment. There was no proper attachment of the aircraft due to Salenia's failure to file a bond before the writ issued. As such the circuit court never had full and competent jurisdiction to render any judgment in the attachment proceeding. Jurisdiction in the Circuit Court of Platte County in the full sense of the word, i.e., power to proceed to an adjudication of the rights of the parties, depended upon proper attachment of the res. *See State ex rel. Nelson v. Williams*, 249 S.W.2d 506, 511 (Mo.App.1952). The ac-

tions taken by the court on and after July 26, 1984, are null and void.

As a practical matter, the events that ensued after the filing of Salenia's petition resulted in the return of the aircraft to Salenia. It appears from the record and the briefs of the parties that Air National is not contesting whether it should regain possession of the aircraft. It also appears from the record and the legal file that Salenia would not have pursued this suit in the Circuit Court of Platte County but for the presence of the aircraft at KCI.

Though the trial court's order of August 3, 1984, granting Salenia unfettered use and possession of the aircraft was void as a matter of law, Salenia nevertheless retrieved the aircraft and flew it out of the United States. In effect, Salenia accomplished its primary goal, obtaining possession of the aircraft. Had the attachment been proper, a serious question would have remained whether Salenia as owner could have in fact used the aircraft to facilitate collecting any judgment it might have obtained against Air National as a result of the alleged breach.

Because the aircraft was never properly attached, the trial court had no jurisdiction to adjudicate the rights and interests of the parties in the aircraft subsequent to July 26, 1984. As such, the court had no jurisdiction to order the written lease and addendum properly terminated by Salenia by virtue of the alleged breach and default of Air National. Nor did the court have jurisdiction to award damages resulting from the breach to Salenia. As to the court's order to dissolve the bond filed by Salenia on August 8, 1984, the court's order of August 3, 1984, requiring the bond was null and void, since the court at that late date had not acquired jurisdiction over the aircraft. Therefore, Salenia was not subject to a court order to have the bond dissolved and released. Because of the disposition reached, the other points on appeal including the bankruptcy issues, will not be addressed.

The judgment is reversed.

All concur.